No. 86,406

MARVIN L. CANAAN, *Appellee,* v. MICHAEL BARTEE, ALLEN BUSH, MARY CURTIS, and KELLY JERNIGAN, *Appellants.*

(35 P.3d 841)

Opinion filed December 7, 2001.

*James L. Eisenbrandt*, of Bryan Cave, L.L.P., of Overland Park, argued the cause, and *Jeffrey D. Morris*, of the same firm, was with him on the brief for appellant Bartee; *James D. Griffin* and *Peter J. Vanderwarker*, of Blackwell, Sanders, Peper, Martin, L.L.P., of Overland Park, were with him on the brief for appellant Bush; *Thomas Wright*, of Wright, Henson, Somers, Sebelius, Clark & Barker, L.L.P., of Topeka, was with him on the brief for appellant Curtis; and *B. Kay Huff*, of Lawrence, was with him on the brief for appellant Jernigan.

*Patrick A. Hamilton*, of Hayes & Kieler, L.L.C., of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This K.S.A. 60-2102(b) interlocutory appeal arises from an action in legal malpractice and negligence. Plaintiff Marvin L. Canaan, on January 5, 1998, filed a lawsuit against Michael Bartee and Kelly Jernigan who had been his court-appointed criminal attorneys, Allen Bush, their legal investigator, and Mary Curtis, his court-appointed criminal appellate defender. The defendants failed to respond to Canaan's discovery requests for more than 2 years and failed to comply with two court orders to do so. The district court sanctioned defendants by granting Canaan's motion for default judgment. The district court denied the defendants' motion to set aside the default judgment and granted defendants' request to certify the denial for interlocutory appeal.

Our jurisdiction is under K.S.A. 20-3018(c), a transfer on our order from the Court of Appeals.

The question is whether the district court abused its discretion by denying the defendants' motion to set aside the default judgment.

Our answer is "yes." We reverse and remand.

## FACTS

In January 1995, Bartee and Jernigan were appointed by the Johnson County Public Defender's Office to defend Canaan. Bush, a legal investigator for the Public Defender's Office, assisted Bartee and Jernigan in preparing Canaan's defense. Canaan was convicted of premeditated first-degree murder, aggravated robbery, and aggravated battery. Before sentencing, he moved for a new trial alleging ineffective assistance of counsel. The district court denied the motion.

Bartee filed Canaan's notice of appeal. Curtis was appointed to represent Canaan in his appeal. She withdrew after Canaan sued her for legal malpractice. We affirmed Canaan's criminal convictions. See *State v. Canaan*, 265 Kan. 835, 964 P.2d 681 (1998).

In December 1997, Canaan filed a pro se petition (Case No. 97C16801) against Bartee, Curtis, Assistant District Attorney Steven Obermeier, and the State of Kansas. Canaan alleged various forms of relief generally designed to facilitate his ability to pursue his rights on direct appeal, including prosecutorial misconduct and resulting emotional distress. Obermeier was counsel for the State on Canaan's direct appeal. Canaan filed a second pro se lawsuit (Case No. 98C102) against defendants Bartee, Jernigan, Bush, and Curtis, and the Johnson County Public Defender's Office.

The second case alleged various claims, including legal malpractice, fraud, breach of contract, breach of warranty, and violation of the Kansas Consumer Protection Act. The two cases were consolidated. The district court dismissed Obermeier from the case, noting that he had prosecutorial immunity. Canaan claimed various injuries and sought damages in excess of $50,000 contending in part that (1) he was "provably innocent" and "wrongfully convicted," (2) Bartee, Jernigan, and Bush failed to appropriately pre-

pare for his defense, (3) Bartee and Jernigan failed to appropriately conduct his trial, and (4) Curtis failed to appropriately handle his criminal appeal.

Upon receiving service of the pleadings, Bartee, Bush, and Curtis exercised their statutory right by requesting legal representation through the Kansas Attorney General's office. See K.S.A. 75-6108 (defense of governmental employees). Assistant Attorney General James Coder was assigned to handle the case for the defendants. Jernigan was not served with the pleadings. However, he received a letter from the Board of Indigent Defense Services notifying him of Canaan's lawsuit and requesting that he also use Coder as his counsel. Jernigan authorized Coder to handle his defense.

In January 1998, Coder filed an answer for the defendants, asserting the affirmative defense of failure to state a claim upon which relief could be granted. The issue regarding Jernigan's lack of service of process was not raised. Coder also reserved any other affirmative defenses uncovered during discovery.

Throughout 1998 and 1999, Coder did not contact the defendants regarding the suit. The district court also found that the defendants had not attempted to contact Coder to check on the status of the case. Each defendant presumed, based on experience with pro se prison inmate cases, that Canaan's lawsuit had been dismissed.

In January and February 1998, Canaan served the defendants with various written discovery requests. On February 18, 1998, having not received any responses to his requests for admissions, Canaan filed a motion to compel discovery. On August 5, 1998, the district court held a telephone case management conference. Coder said that he had never received any of Canaan's discovery requests. Canaan was directed to send another copy to Coder, which he did. The district court also ordered the defendants to respond to the discovery requests. Apparently Coder failed to inform his clients of the discovery requests.

The district court set another telephone case management conference for October 23, 1998, and directed Coder to make the necessary arrangements. In anticipation of the conference, Canaan filed another motion to compel discovery. On November 30, 1998,

Canaan filed a motion for default judgment. Coder did not reply to either motion. The district court was prepared to have the telephone conference on October 23, but Coder failed to arrange the conference. He also failed to return phone calls from the district court's staff attempting to reschedule the hearing.

In October 1999, 11 months after Canaan filed his motion for default judgment, the district court set another case management conference for November 5, 1999, and ordered Coder to make the arrangements. The district court's written order specifically said that Canaan's motion for sanctions would be considered at the November 5 conference. Copies of the order were sent to both Coder and Kansas Attorney General Carla Stovall. At the November 5 hearing, Coder said that the entire file containing information about Canaan's lawsuit had been lost. Coder had no recollection of having received the discovery requests. He said that after receiving the district court's October 12 order, he had made one attempt to look at the court file. However, he had arrived at the courthouse "right at the end of the day" and was unable to obtain the file.

The district court: (1) granted Canaan's request for sanctions but took under advisement what the sanctions would be, (2) noted that the existence of extensive outstanding discovery requests was discussed in detail at the August 5, 1998, case management conference, (3) concluded, based on proof of mailing on a prison form, that Canaan's discovery requests were re-served as directed, (4) observed that Coder had done nothing to respond to the requests, (5) for the second time, ordered the defendants to provide full and complete responses to Canaan's discovery requests, giving them until December 5, 1999, to do so, (6) gave Coder the opportunity to file a motion to set aside Canaan's requests for admissions, and (7) scheduled a hearing for January 7, 2000, for the purpose of hearing arguments regarding sanctions and Canaan's motion for default judgment.

On December 6, 1999, Coder filed for a 21-day extension of the December 5, 1999, deadline for complying with the district court's order to respond to the outstanding discovery requests. The district court informed Coder that it did not grant extensions of time ex

parte and that he would either need to set the motion for hearing or obtain the agreement of Canaan. Coder neither requested a hearing nor contacted Canaan about the proposed extension. Then, the hearing that had been set for January 7, 2000, was postponed until January 20, 2000, because Coder apparently fell ill just as the January 7 conference call was to have begun. At the January 20 telephone conference, Coder reported that the defendants still had not responded to any of the outstanding discovery requests. Coder said that he had mailed the requests to his clients on November 18, 1999, but the requests had not been received until sometime during the week of January 10, 2000. (The postmark on Coder's November 18, 1999, letter to Bartee was January 10, 2000.) Jernigan apparently never received the requests.

The district court mailed copies of Kansas and federal cases containing standards that would be applied in determining the appropriate sanctions to Coder and Canaan and gave them the opportunity to file briefs. According to the district court, both Canaan and Coder filed briefs by the January 31, 2000, deadline. The defendants dispute this, arguing that Coder did not file a brief. They contend Coder only filed a motion for summary judgment with a memorandum in support, in which he asserted that Canaan's claims were insufficient. However, the district court's February 14, 2000, memorandum decision notes that the defendants filed a brief. These briefs are not in the record on appeal, nor are they listed on the civil appearance docket sheet.

The district court observed that before filing their brief, the defendants had never contended that the discovery requests served by Canaan lacked relevance to the suit. The court found: "We decline, given the lack of clear legal authority in Kansas and the failure of defendants to object to the discovery on relevance grounds for two years, to hold that the discovery sought by Canaan was irrelevant." The district court entered a default judgment on both consolidated cases as a sanction. The Attorney General's office notified the defendants of the default judgment entered against them.

On March 9, 2000, the defendants, having retained new counsel, filed a motion to set aside the default judgment. The defendants

asserted that their culpability, if any, was excusable based on the alleged active concealment perpetrated on them by Coder. They argued that Coder failed to communicate with them. The district court acknowledged that the defendants presented new information "confirming the gross negligence of their counsel." However, the district court found it improper to set aside a default when "uncontroverted evidence also shows the defendants themselves were not diligent in following the suit or in bringing their counsel's failure to the Court's attention." The district court reasoned that to grant the defendants' motion "would reward their willful neglect of this lawsuit." On December 21, 2000, the district court granted the defendants' request to certify its decision for interlocutory appeal.

## DISCUSSION

The certified question on interlocutory appeal is "[w]hether, as a matter of law under K.S.A. 60-260(b) and Kansas Supreme Court precedent, the court abused its discretion in denying the motion to set aside default judgment under the circumstances present in this case."

A preliminary inquiry is whether the district court abused its discretion by imposing a default judgment as a discovery sanction. The defendants answer the inquiry in the affirmative, focusing on the court's failure to consider or impose lesser sanctions to achieve the objectives of discovery. Canaan counters that the default judgment was an appropriate sanction. The defendants' contention has merit.

### Default Judgment Where No Lesser Sanctions Were Imposed

The imposition of sanctions for failure to comply with discovery orders is a matter within the sound discretion of the district court. The decision to impose sanctions will not be overturned unless that discretion has been abused. *Shay v. State Dept. of Transportation*, 265 Kan. 191, 194, 959 P.2d 849 (1998).

Where the evidence shows that a party has acted in deliberate disregard of reasonable and necessary court orders and the party is afforded a hearing and an opportunity to offer evidence of ex-

cusable neglect, the imposition of a stringent sanction will not be disturbed. 265 Kan. at 194. However, we have said: "Where the party failed to comply due to inability to do so rather than bad faith, a severe sanction such as dismissal or default probably would be inappropriate." *Hawkins v. Dennis*, 258 Kan. 329, 341, 905 P.2d 678 (1995). See also *Vickers v. City of Kansas City*, 216 Kan. 84, Syl. ¶ 7, 95, 531 P.2d 113 (1975) (reversing dismissal for violation of a discovery order where the documents did not go to a dispositive issue and the appellant made a good faith effort to comply with the court's order).

The defendants argue that they were not "afforded" a hearing before the default judgment sanction was imposed because they personally were not "informed" of the hearings. However, they do not dispute that their attorney was informed and present at the hearings.

K.S.A. 2000 Supp. 60-237(b)(2)(A)-(E) provides sanctions to be imposed where a party has not complied with discovery orders. In *Binyon v. Nesseth*, 231 Kan. 381, 383, 646 P.2d 1043 (1982), *superceded by statute on other grounds as stated in Smith v. Printup*, 262 Kan. 587, 596-97, 938 P.2d 1261 (1997), we observed, "Both Kansas appellate courts have recognized the severity of judgment by default as a sanction for failure to comply with discovery orders, and each court has emphasized the importance of careful exercise of judicial discretion before imposition of that sanction." We have held in reviewing severe sanctions from a plaintiff's perspective that dismissal of a lawsuit should only be used as a last resort when other lesser sanctions are clearly insufficient to accomplish the desired end. *Burkhart v. Philsco Products Co.*, 241 Kan. 562, 576-77, 738 P.2d 433 (1987).

We have identified the following tests in determining whether the district court has abused its discretion in granting default judgment for failure to comply with discovery orders: (1) Does the discoverable material go to a dispositive issue in the case? (2) Are alternative sanctions sufficient to protect the party seeking discovery available? and (3) Is the requested information merely cumulative or corroborative? *Hawkins*, 258 Kan. at 341. See also *Wenger v. Wenger*, 239 Kan. 56, 57-58, 716 P.2d 550 (1986) (counterclaims

dismissed and default judgment entered for continued failure to make discovery); *Binyon,* 231 Kan. at 383-84 (default judgment entered after repeated unsuccessful attempts to force defendant to comply with discovery orders).

At issue here is whether alternative sanctions sufficient to protect Canaan were available. See *Hawkins,* 258 Kan. at 341. The defendants argue that the district court disregarded the varying degrees of sanctioning available in K.S.A. 2000 Supp. 60-237 when it granted Canaan's motion for default judgment. They correctly assert that generally the sanction should be designed to accomplish the objects of discovery rather than for the purpose of punishment. See *Hawkins,* 258 Kan. at 341. We have said: " 'Most of the cases in which a dismissal or a default judgment have been held proper sanctions involve parties who refuse or fail to follow a discovery order.' " *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.,* 250 Kan. 54, 63, 824 P.2d 933 (1992).

There is no transcript of the January 20, 2000, sanctions telephone conference in the record on appeal. However, the district court issued an extensive memorandum opinion, concluding that a default judgment was the appropriate sanction. Although the district judge did not specify why lesser sanctions would not be appropriate, he did say: "On the record found here, the Court concludes that lesser sanctions would not be effective."

The district court reasoned that the defendants were "on notice" that Canaan was seeking default judgment. According to the district judge, notice was evidenced by (1) Canaan's motion for default judgment filed November 30, 1998, (2) the November 5, 1999, hearing (the court granted Canaan's motion for sanctions but took under advisement which sanction would be entered, specifically saying that default judgment was one of the possible sanctions), and (3) the follow-up order of November 12, 1999 (the defendants were ordered to respond to discovery requests by December 5, 1999).

Later, at the hearing to set aside the default judgment, the district court was made aware that Coder and the Attorney General's office failed to communicate with the defendants until notification of the default.

The defendants rely on *Shay v. Kansas Dept. of Transportation,* 265 Kan. 191, 959 P.2d 849 (1998), to support their contention that default judgment was an inappropriate sanction here because Coder did not notify his clients of the sanctions entered against them or of the district court's plan to proceed with the imposition of sanctions. In *Shay,* the plaintiff appealed the dismissal of his eminent domain case with prejudice for failure to provide discovery. At a hearing on the Department of Transportation's motion to dismiss, Shay's attorney told the court that he would comply with the discovery order within the next 7 days. The district court found that Shay had failed to protect his interests and had not complied with the discovery order. On appeal, we said that dismissal of a case should only be used as a last resort when other lesser sanctions are clearly insufficient to accomplish the desired end. 265 Kan. at 194 (citing *Burkhart,* 241 Kan. at 576-77). We also found that there was no indication that the district court had considered any sanction less severe than dismissal and concluded that the ultimate sanction was "clearly unwarranted" under the facts of the case. 265 Kan. at 196.

In *Burkhart,* 241 Kan. at 578, we found that the district court abused its discretion by granting a dismissal, in part because less drastic sanctions could have been effectively used. We commented: "The court's frustration with counsel is readily understandable and sanctions directed to counsel rather than the plaintiff may have been entirely appropriate." 241 Kan. at 579. See also *Webb v. District of Columbia,* 146 F.3d 964, 975-76 (D.C. Cir. 1998) (finding an abuse of discretion where the court failed to consider lesser sanctions).

The district court here was understandably frustrated with Coder's actions (or inactions) and excuses. At the November 5, 1999, telephone conference, Coder said: (1) he had no recollection of ever having received any discovery requests from Canaan, (2) he had a caseload of between 150 and 200 inmate cases, and (3) the case file was misfiled in the Attorney General's office and was apparently missing for several months. When the district court asked Coder if he had notified his clients about the lost file and about the pending default judgment motion, Coder simply an-

swered, "I had never seen a motion for a default judgment, Your Honor."

An example of Coder's disrespect for the judicial process is described by the district judge's bench comments following Coder's failure to coordinate a previous case management conference:

"As I've already noted, that second conference did not occur because it was not set up by Mr. Coder, and we were unable to get Mr. Coder to return our phone calls thereafter. A motion for sanctions was filed in both cases and notes the failure to respond to discovery. I believe that it is clearly an egregious thumbing of the nose toward the legal process for the [Attorney General's office] to refuse to respond to this discovery for more than a year after its initial service and indeed its re-service."

Here, as in *Shay* and *Burkhart*, lesser sanctions could have been imposed. Granting a default judgment should only be used as a last resort. The district court issued no lesser sanctions and none against Coder. The district court, in its February 14, 2000 order, addressed its failure to employ lesser sanctions by stating that it had made clear at the November 5, 1999, hearing that default was a potential sanction. Citing *Settle v. Brim,* 182 F.R.D. 635, 638 (D. N.M.), *aff'd* 162 F.3d 1174 (10th Cir. 1998), the court said that *the defendants* had been under threat of default but had still not complied, so default was justified. The district court's statement was grounded in part on two false statements by Coder. Coder said that he had sent the November 12, 1999, written order to the parties and that he had sent the discovery requests to the parties, and they had not responded.

The motion to set aside the default judgment corrected those misrepresentations and explained that Coder *never* sent the November 12, 1999, written order to his clients. He had simply lied to the court. Also, the district court learned that certain defendants, upon receiving Coder's November 18, 1999, correspondence on January 11, 2000, made attempts to contact Coder. Coder uniformly ignored the requests for information while lying to the court that he had received no response from his clients.

The district court acknowledged the material false statements from Coder: "In truth, Mr. Coder apparently never notified his clients of the sanctions entered against them or the Court's plan

to proceed with their imposition. In fact, there appears to have been no communication [until notification of the default]." The district court also had acknowledged in the November 12, 1999, order that Coder's activities had violated the "substantive rights" of his clients. The district court knew Coder was failing both his clients and the court for some time leading up to the issuance of the default judgment. Characterizing Coder's professional neglect as "gross negligence," the district court imposed no lesser sanction along the way. Failure to utilize lesser sanctions before entering the ultimate sanction of default judgment qualifies as an abuse of discretion under the circumstances presented here.

## Relief under K.S.A. 60-260(b)

The defendants argued below that the district court should have set aside the default judgment under K.S.A. 60-260(b)(1) or (6). K.S.A. 60-260(b) provides relief from judgment under certain circumstances:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment."

In considering whether to set aside a default judgment, the district court should consider (1) whether the nondefaulting party will be prejudiced, (2) whether the defaulting party has a meritorious defense, and (3) whether the default was the result of excusable neglect. *Jenkins v. Arnold*, 223 Kan. 298, 300, 573 P.2d 1013 (1978).

Here, the district court noted that "the defaulting party must show the existence of all three of these elements" and that the "failure to meet the third element would, by itself, require denial of the motion [to set aside the judgment]." The court found that the default judgment here resulted from *both* inexcusable neglect and from willful acts of the defendants; thus, it concluded that either of those factors alone required denial of defendants' motion to set aside the default judgment.

The defendants assert that any culpability on their part was excusable neglect, given the alleged "unconscionable failures and active concealment of legal counsel." In Bartee's affidavit, he said he tried to call Coder after receiving the discovery request in the mail in January 2000, but Coder did not call him back or contact him about a hearing regarding sanctions. Bartee also said that he received a motion in support of sanctions filed by Canaan on January 31, 2000. Bartee, again, called Coder's office, but Coder did not return his call.

In Bush's affidavit, he said that he tried to call Coder after receiving the discovery request in the mail in mid-January 2000. He left two messages with Coder's office, but his calls were not returned. Bush said he was not informed of a November 1999 hearing or that sanctions were going to be imposed for failure to respond to discovery requests. In addition, he was not informed of a hearing on the consideration of appropriate sanctions.

In Curtis' affidavit, she said that she received Coder's November 18, 1999, letter concerning the discovery request on January 12, 2000, a date long-past the December 5, 1999, deadline. She said the only other communication occurred when Coder called her to tell her of the February 14, 2000, default judgment decision. She did not state that she had tried to call Coder.

In Jernigan's affidavit, he said that he had received a form authorizing the "Attorney General" to represent him. After that, he never heard anything more from the Attorney General's office about the case. The first information he received about the lawsuit was on February 21, 2000, when the Attorney General's office called him to inform him that a default judgment had been entered against him.

In its memorandum decision, the district court noted:

"In truth, Mr. Coder apparently never notified his clients of the sanctions entered against them or the Court's plan to proceed with their imposition. In fact, there appears to have been no further communication between the Attorney Generals' Office and defendants Bartee, Bush, and Curtis until each was contacted by Coder or John Dowell, also of the Kansas Attorney General's Office, and informed of this Court's February 14, 2000, decision entering default judgment against them."

However, the district court found that Bartee, Bush, and Curtis had notice that "something was amiss" when in January 2000 they

received the letter dated November 18, 1999, which listed a December 5, 1999, deadline for responding to Canaan's discovery requests. In the letter, Coder told his clients that the discovery requests had "gotten misfiled" with "yet other frivolous lawsuits" and that he would "try to get an extension" if the defendants were unable to respond by the December 5 deadline. The letter failed to mention pending sanctions. The defendants heard nothing else regarding the case until the default judgment, except that Bartee on January 31, 2000, received a motion in support of sanctions filed by Canaan. The file-stamped copy was apparently placed in the clerk's office box for the Public Defender's Office and distributed to Bartee. The district court found that the defendants took no steps to comply or to "adequately protect their own legal interests."

The district court also found that, unlike the other three defendants, Jernigan never received Coder's belated November 18, 1999, letter. The court pointed out that Jernigan made no attempts to contact Coder, the Attorney General's office, or the court to check on the status of the litigation pending against him.

## Excusable Neglect

The district court correctly said that the party claiming excusable neglect has the burden to plead and prove it. See *Lee v. Brown,* 210 Kan. 168, 170, 499 P.2d 1076 (1972). The court observed that the issue of whether a party's conduct constitutes excusable neglect should be decided on a case-by-case basis, and consideration should be given to whether the party's conduct reflects neglectful indifference or reckless indifference. *Reliance Insurance Companies v. Thompson-Hayward Chemical Co.,* 214 Kan. 110, 116-17, 519 P.2d 730 (1974). See *Mid Kansas Fed'l Savings & Loan Ass'n v. Burke,* 233 Kan. 796, 798-99, 666 P.2d 203 (1983).

Canaan contends that the defendants' alleged "willful refusal" to participate in the proceedings failed to constitute excusable neglect and, thus, prohibited setting aside the default judgment. He reasons that all of the defendants knew they had been sued and were capable of monitoring the proceedings. Asserting that the defendants had a duty to "act with diligence" to ensure that their interests were protected, Canaan argues that the 2-year absence of

communications from Coder should have alerted the defendants of problems in the lawsuit. It appears that the district court agreed with Canaan's reasoning.

Canaan also asserts that the defendants still refuse to comply with discovery requests. However, the record shows that in March and April 2000, Canaan's criminal case file was made available to him. A letter dated May 14, 2000, confirmed that Canaan had received and/or had access to all of the materials sought from his criminal case. Thus, this part of the discovery has been completed. In addition, the civil appearance docket shows that on March 15, 2000, defendant Bush filed answers to Canaan's interrogatories and responses to Canaan's request for admissions for specific facts. It also appears that discovery responses relating to the motion to set aside default were provided.

The district court found: "Coder showed a blatant disregard for this Court and its procedures, offering a variety of excuses for his conduct along the way. His inaction led to sanctions directly against the defendants, and he is primarily responsible for the result." However, citing *In re Fitzimmons*, 920 F.2d 1468 (9th Cir. 1990), the district court concluded that "blaming egregious failures to comply with discovery on counsel is usually not sufficient to avoid even the most severe sanctions."

The district court found that the acts or omissions of an attorney are ordinarily attributed to the client. Thus, in determining whether excusable neglect was present, the court observed that it was proper to focus on "whether the neglect of the moving party *together* with that party's counsel was excusable." The defendants agree that the relationship between a client and an attorney is one of agency. See *Pearcy v. First National Bank*, 167 Kan. 696, 698, 208 P.2d 217 (1949). However, they argue that any presumption that he or she is acting with the client's authority can be countered with a showing to the contrary. See *Meyer v. Meyer*, 209 Kan. 31, 39, 495 P.2d 942 (1972) ("Where an attorney at law appears for another it will be presumed, in the absence of a showing to the contrary, that he had authority to appear.").

### Discovery Delay Due to Attorney Conduct

Kansas courts have not previously established whether the misconduct of an attorney alone in failing to respond to discovery

requests warrants a default judgment sanction. The law in this area is unsettled.

As previously mentioned, in *Burkhart*, 241 Kan. at 578, we reversed the district court's dismissal as a discovery sanction due to the conduct of the plaintiff's counsel. The plaintiff suffered severe injuries, including the loss of sight in one eye and permanent brain damage. He was then incapacitated, and the action was filed for him by his legally appointed conservator. We observed that the discoverable materials, expert reports, could have been obtained through the use of lesser sanctions than dismissal. 241 Kan. at 578.

Regarding the analysis of whether a party has failed to comply with discovery due to inability or due to willfulness or bad faith, we said:

"Most of the cases in which a dismissal or a default judgment have been held proper sanctions involve parties who refuse or fail to follow a discovery order. Here, plaintiff is an incapacitated person without ability to control any stage of the proceedings or to assist or direct his attorney. *To deprive plaintiff of his day in court for the actions of his attorney, when other lesser sanctions may have been sufficient, constitutes an abuse of the trial court's discretion.*

. . . .

". . . The court's frustration with counsel is readily understandable and *sanctions directed to counsel rather than the plaintiff may have been entirely appropriate.*" (Emphasis added.) 241 Kan. at 578-79.

In *Binyon v. Nesseth*, 231 Kan. 381, 646 P.2d 1043 (1982), *superceded by statute on other grounds as stated in Smith v. Printup*, 262 Kan. 587, 596-97, 938 P.2d 1261 (1997), we affirmed a default judgment sanction after finding that the *defendant* engaged in willful and deliberate disregard of court orders. In addition, before granting the default judgment, other sanctions had been imposed upon the defendant. 231 Kan. at 384.

The Court of Appeals upheld default and dismissal sanctions in two cases where the parties themselves contributed to the discovery delay. See *Mansfield Painting & Decorating v. Budlaw Services, Inc.*, 3 Kan. App. 2d 77, 81-82, 589 P.2d 643 (1979) (evidence demonstrated a deliberate course of delay by the defendants and that no other effective sanctions were available); *Fields v. Stauffer Publications, Inc.*, 2 Kan. App. 2d 323, 330, 578 P.2d 1138 (1978)

(plaintiff consistently and willfully refused to answer questions posed to him during depositions in a libel claim against a newspaper). The *Fields* court noted the well-established rule that the "the dismissal of a cause of action is a drastic remedy to impose as a discovery sanction and should be used only in extreme circumstances." 2 Kan. App. 2d at 328 (citing *Vickers v. City of Kansas City*, 216 Kan. 84, 531 P.2d 113 [1975]).

In contrast, *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 523 P.2d 351 (1974), involved discovery sanctions due solely to the defense counsel's conduct. We reversed the district court's refusal to set aside a default judgment, finding that the default unduly penalized the party for the actions of legal counsel. 215 Kan. at 65. Here, the district court distinguished *Montez,* noting that in *Montez*, the parties' own conduct did not constitute inexcusable neglect. Also, none of the principals in *Montez* had any actual knowledge of the suit and could not be charged with neglect of any kind.

The district court here relied primarily upon federal court cases in denying the defendants' request to set aside the default judgment. First, the court cited *Inryco, Inc. v. Metropolitan Engineering Co., Inc.*, 708 F.2d 1225, 1234 (7th Cir.), *cert. denied* 464 U.S. 937 (1983) (despite having knowledge of suit, defendants contacted attorney fewer than a half a dozen times, had virtually no contact with attorney for more than a year, and at no time during the 20 months between the filing of complaint and the entry of default judgment knew the precise procedural status of the case; attorney misconduct imputed to defendants).

The district court also cited: *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2nd Cir.), *cert. denied sub nom. Shanklin v. S.E.C.*, 525 U.S. 931 (1998) (affirming a finding that excusable neglect had not been shown when a default was granted due to an attorney's inaction, but the defaulting party made no attempt to contact his attorney over an 11-month period); *Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 368-69 (6th Cir.), *cert. denied* 522 U.S. 868 (1997) (dismissal warranted, despite no consideration of lesser sanctions, where attorney's conduct was "contumacious"); *Florida Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993) (finding plaintiff made extensive efforts to notify defendant and finding that

defendant had a duty to act with some diligence to ensure that his attorney was protecting his interests); *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1010 (8th Cir. 1993) (" 'A [party] chooses counsel at his [or her] peril' "and " 'Counsel's disregard of his [or her] professional responsibilities can lead to extinction of his [or her] client's claims.' "); *Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 16 (1st Cir. 1983) ("The argument that the sins of the attorney should not be visited on the client is a seductive one, but its siren call is overborne by the nature of the adversary system."); *Jones v. Estelle*, 693 F.2d 547, 549 (5th Cir. 1982), *cert. denied* 460 U.S. 1072 (1983) (failure to file a timely notice of appeal; court found that there is an implicit burden on the party to make periodic inquiries into the course of the proceedings); *Ake v. Mini Vacations, Inc.*, 174 F.R.D. 110, 112-13 (M.D. Fla. 1997) (finding client has duty to monitor the progress of the case and to communicate with his attorney and also finding no meritorious claim); *Tisdale by and through Tisdale v. Darkis*, 101 F.R.D. 307, 309-10 (D. Kan. 1984) (imposing dismissal sanction where failure to comply was the sole fault of counsel and counsel's conduct could only be characterized as a "gross dereliction of his professional responsibilities"); *In re Folger*, 149 Bankr. 183, 185-87 (Bankr. D. Kan. 1992) (debtors in bankruptcy, who failed to inform their attorney of their change of address and failed to communicate with him by any other means, unsuccessfully argued that they had no obligation to keep in contact with their counsel despite the efforts of their attorney to contact them). Compare *Starlight Intern., Inc. v. Herlihy*, 190 F.R.D. 587, 594-95 (D. Kan. 1999) (repetitive failure to comply with discovery orders resulted in a monetary sanction for numerous instances of misconduct attributable to counsel *and* clients, and the court imposed a substantial penalty on counsel for its part in the misconduct).

A counterbalance to the cited federal decisions is found in state court precedent. We observe that other state courts have held that default judgments should be set aside when the discovery sanction can be linked to the misconduct of legal counsel. See *e.g., Wayne Cook Enterprises, Inc. v. Fain Properties*, 196 Ariz. 146, 149, 993 P.2d 1110 (1999), held that the party, *not solely counsel*, must have

obstructed the discovery process. It also noted that the district court must have considered and rejected lesser sanctions as a penalty before the sanction of dismissal is warranted in a case.

In *Walicki v. Waste Management, Inc.*, 703 So. 2d 1095 (Fla. App. 1997), the record showed 7 years of dilatory conduct on the part of plaintiff's counsel. The *Walicki* court found that it was an abuse of discretion to dismiss the complaint as a sanction based solely on the attorney's noncompliance with a court-imposed deadline. *Walicki* observed that the record

"does not show that appellant personally contributed to the delayed filing or the protracted course of this litigation. Appellant should not be made to suffer the loss of viable claims due to her attorney's malfeasance where there is no evidence in the record to indicate that she personally engaged in misconduct." 703 So. 2d at 1096.

See also *Lovato v. Sante Fe Internat. Corp.*, 151 Cal. App. 3d 549, 555, 198 Cal. Rptr. 838 (1984) (reversing a default judgment where the conduct of the attorney, who long after he had been suspended and fired by defendant accepted interrogatories on defendant's behalf, who never told plaintiff he had been suspended, and who never told defendant about interrogatories or motions ultimately for sanctions and default, constituted extrinsic fraud); *Horton v. McCary*, 635 So. 2d 199, 203-04 (La. 1994) (reversing the judgment as discovery sanction to determine if the litigants were victims of their legal counsel).

Here, the district court was aware that Coder was failing his obligations as legal counsel. It ordered that Attorney General Stovall be notified of the November 5, 1999, hearing, saying: "[W]e have tried to let the Attorney General's Office know that this was a serious matter." At the hearing on the motion to set aside the default judgment, the court noted that the Attorney General's office had referred Coder to the Kansas Disciplinary Administrator for ethical violations relating to his conduct in this case and that he was no longer employed by the Attorney General. See *In re Coder*, No. 87,392, filed this date.

The defendants were employed by the State to assist indigent persons facing criminal charges. The legislature, by statute, K.S.A. 75-6108, placed the responsibility of representing defendants with

the Attorney General of Kansas. Coder, as assigned counsel, totally abandoned his clients. His conduct as an officer of the court is so egregious that it permeates this entire record. The foul professional odor that arises from his representation supports our excusable neglect finding under K.S.A. 60-260(b)(1). Under the facts here, the district court abused its discretion in not setting aside the default judgment.

The defendants argued below that the gross negligence and active concealment of Coder constituted "[an]other reason justifying relief from judgment" under K.S.A. 60-260(b)(6). Because of our holding under K.S.A. 60-260(b)(1), we need not reach the 60-260(b)(6) contention.

### Meritorious Defense

The defendants also assert that they had a meritorious defense. In their answer to Canaan's petition, the defense of failure to state a claim upon which relief could be granted was asserted. Defendants also reserved any other affirmative defenses uncovered during discovery. In their motion to set aside the default judgment, the defendants raised the statute of limitations, collateral estoppel, res judicata, and mootness. Canaan argues that the defenses raised in the motion were untimely, since they were not raised in the answer.

Counsel for defendants, under Rule 6.09(b) (2000 Kan. Ct. R. Annot. 41), have submitted as additional authority the recent case *Coscia v. McKenna & Cuneo*, 25 Cal. 4th 1194, 108 Cal. Rptr.2d 471, 25 P.3d 670 (2001). In *Coscia*, the California Supreme Court conducted a detailed analysis of legal malpractice claims filed by convicted felons against criminal defense counsel. *Coscia* held "[t]hat exoneration by postconviction relief is a prerequisite to recovery for legal malpractice arising out of a criminal proceeding." 25 Cal. 4th at 1199.

Because of the district court's finding here that no good cause to set aside the default judgment was shown, the district court did not address the issue of whether a meritorious defense was raised by the defendants. Thus, as Canaan's counsel responded at oral

argument, that question and the impact of *Coscia* on the final disposition of this case are not now before us.

The district court's decision denying the defendants' motion to set aside the default judgment is reversed, and the case is remanded for further proceedings.