(206 P.3d 13)
No. 100,248

CRAIG ALAN FISCHER, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Petition for review granted February 4, 2010.

Opinion filed April 17, 2009.

*Michelle Davis*, of Kansas Appellate Defender Office, for appellant.

*Jared S. Maag*, deputy solicitor general, and *Stephen N. Six*, attorney general, for appellee.

Before GREENE, P.J., GREEN and LEBEN, JJ.

GREENE, J.: Craig Alan Fischer appeals the district court's denial of his K.S.A. 60-1507 motion, arguing that he was prejudiced by not being present for an evidentiary hearing on his motion. We agree, vacate the district court's order, and remand for an evidentiary hearing with Fischer present.

### Factual and Procedural Background

In March 2001, Fischer was convicted after a jury trial of attempted first-degree murder, aggravated kidnapping, attempted rape, and criminal possession of a firearm. On direct appeal of his convictions, he challenged the sufficiency of the evidence to sup-

port his conviction of attempted rape, and he argued the trial court erred in rejecting his challenge to the jury under *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). A panel of our court affirmed his convictions. *State v. Fischer*, case No. 87,740, unpublished opinion filed July 16, 2004, *rev. denied* 278 Kan. 848 (2004).

In September 2005, Fischer filed his K.S.A. 60-1507 motion alleging ineffective assistance of trial counsel. He alleged his trial counsel was ineffective in five regards: (1) He failed to investigate and interview alibi witnesses Robert Steen, Sally Steen, Barry Steen, Antolin Corona, Enrique Romero, Miguel Delgado, Horencia Garcia, and two coworkers — Corona and Romero, (2) he failed to object to judicial misconduct when the district court made reference to the Court of Appeals, (3) he failed to present evidence that would have established a *Batson* claim, (4) he failed to present key alibi witnesses in his defense, and (5) he failed to object to the use of a photo lineup.

The district court determined that an evidentiary hearing was in order but denied Fischer's request to be present. Over his objection, Fischer was permitted to participate in the hearing by phone. Based on this hearing, the district court denied Fischer's motion, concluding that Fischer was not entitled to relief. Fischer appeals.

### Did the District Court Err in Conducting the Evidentiary Hearing Without Fischer Being Present?

Fischer argues that the district court erred in permitting him to participate in the evidentiary hearing by telephone rather than in person, relying on *Bellamy v. State*, 285 Kan. 346, 357, 172 P.3d 10 (2007), and *Lujan v. State*, 270 Kan. 163, 170, 14 P.3d 424 (2000). The parties suggest that the question framed is one of due process rights based on statutory or constitutional interpretation and application, thus framing questions of law over which we have unlimited review. *State v. Kirkpatrick*, 286 Kan. 329, 351, 184 P.3d 247 (2008); *State v. Gary*, 282 Kan. 232, Syl. ¶ 1, 144 P.3d 634 (2006).

We note at the outset that the district court denied Fischer's request to be present "due to his two previous convictions for mur-

der and the conviction in the underlying case of attempted murder." Nothing further is reflected in the record as to the basis for the ruling. We also note the record reflects substantial difficulty with Fischer's telephonic participation, including episodes where Fischer complained that he could not hear the proceedings, and Fischer's inability to answer questions about one of the prior witnesses because he claimed that he was unable to hear that witness. These difficulties may have been compounded by the need for a translator for two of the witnesses. The State argues this difficulty "falls remarkably short of establishing a level of prejudice which would require reversal."

K.S.A. 60-1507(b) does not require the production of the movant at a hearing on the motion.

> "*Hearing and judgment.* Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the county attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. *The court may entertain and determine such motion without requiring the production of the prisoner at the hearing.*" (Emphasis added.)

Supreme Court Rule 183(h) provides, however, that the movant *should* be produced at a hearing where substantial issues of fact involving the movant are to be explored:

> "The prisoner *should* be produced at the hearing on a motion attacking a sentence where there are substantial issues of fact as to events in which the prisoner participated." (Emphasis added.) 2008 Kan. Ct. R. Annot. at 248.

In *Bellamy*, our Supreme Court outlined the options available to the district court in addressing a motion under 60-1507. Although the case did not frame the precise issue before us here, the court's explanation of the option of a full evidentiary hearing clearly contemplates that the hearing be conducted " 'with the presence of the petitioner.' " 285 Kan. at 353. Moreover, the court ruled that "[b]ecause the factual issues involve events in which Bellamy participated, he must be present at the hearing." 285 Kan. at 357.

In *Lujan*, our Supreme Court similarly outlined the option of a full evidentiary hearing "with the presence of the petitioner" but

held that "presence" was not a question subject to the court's discretion, but rather a matter of legal entitlement.

"[I]t is clear that where such a hearing is conducted and substantial issues of fact exist as to events in which the petitioner had participated, the petitioner must be allowed to be present. Prior to the hearing, Lujan asked to be present. The district court·denied his motion. However, this denial was not based on the district court's conclusion that no substantial factual issues had been raised regarding events in which Lujan had participated. Rather, the district court decided that Lujan's presence was unnecessary because an affidavit regarding his testimony would suffice. Under the circumstances of this case, *the presence of the petitioner was not a question subject to the court's discretion. The petitioner was entitled to be present under the law of this state.*" (Emphasis added). 270 Kan. at 171.

Although the State suggests there is no constitutional right to be *physically* present at postconviction proceedings in federal court, we need not explore this question because the right to be present at such proceedings in Kansas is based in Kansas law and has been clearly articulated by our Supreme Court. We are obligated to follow controlling precedent from our Supreme Court. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005).

We conclude that "presence" of a 60-1507 movant at a full evidentiary hearing does not include mere telephonic participation where: (1) the record fails to cite any basis for denial of physical presence other than the nature of the movant's conviction; and (2) the record reflects substantial difficulty in the movant's ability to hear the proceedings. First, we note that Rule 183(h) does not contemplate mere telephonic participation; the Rule states that the movant "should be *produced.*" Production of the movant clearly means physical presence.

Second, we do not believe the term "presence" includes mere telephonic participation. "Presence" is "the fact or condition of being present." Webster's Third New International Dictionary 1793 (1993). Black's Law Dictionary defines "presence" as "the state or fact of being in a particular place and time." Black's Law Dictionary 1221 (8th ed. 2004). Although telephonic participation has been deemed sufficient in other proceedings, we believe that the movant's due process interest in an evidentiary hearing in a habeas corpus proceeding to determine whether he or she has been

subject to a constitutional deprivation is too significant to justify an appearance by telephone. See, *e.g., In re Adoption of J.M.D.,* 41 Kan. App. 2d 157, 202 P.3d 27, 36 (2009).

We are persuaded that mere telephonic participation in an evidentiary hearing does not enable the movant to hear and observe witnesses, attorneys, or the judge, and certainly does not enable the manner of assistance to his or her own counsel that could be critical to such a hearing. We acknowledge that Fischer was consulted by his attorney on several occasions during the hearing, but the record seems to reflect that these consultations were made with his attorney's side of the conversation spoken in open court. If the movant is entitled to be present at such a hearing, telephonic participation is a poor substitute.

Although the parties have not cited Rule 145, we believe it consistent with our analysis in this case. The Rule provides:

"The court, in its discretion, may use a telephone or other electronic conference to conduct any hearing or conference, *other than a trial on the merits.* The court may require the parties to make reimbursement for any charges incurred by the court." 2008 Kan. Ct. R. Annot. 233.

Obviously, an evidentiary hearing on a 60-1507 motion is *the trial on the merits* in that proceeding. In conducting Fischer's hearing by telephonic participation, the district court violated the spirit if not the letter of this Rule. By negative implication, the Rule does not permit the substitution of telephonic participation for presence in a trial on the merits. The policy underpinning for excluding trials on the merits from permissible telephone hearings is identical to the reasons cited above that make telephonic participation in such a hearing a poor substitute for physical presence.

This leaves only the question whether "substantial issues had been raised regarding events in which Fischer had participated," thus entitling him to be present. We examine the issues raised by Fischer's motion and conclude that they included events in which he participated, thus requiring his presence. Specifically, at least two of the issues raised regarded such events: (1) failure of trial counsel to investigate, interview, and present a host of alibi witnesses, all of whom had allegedly been identified by Fischer to his

trial counsel; (2) failure of trial counsel to object to use of a photo taken after Fischer was charged with the offenses. The extent to which alibi witnesses known to Fischer could have been helpful to Fischer's defense was clearly an issue involving Fischer's direct participation and knowledge. The photo issue was apparently rather confusing, and we note that there was uncertainty regarding the precise photo at issue and how it was used; clearly, this was an issue that had Fischer been present, he might have clarified. As noted by our Supreme Court in *Lujan*, the presence of the movant might have been helpful in cross-examining or rebutting his trial counsel's testimony on these issues, and his telephonic participation was not a proper substitute under these circumstances. 270 Kan. at 172.

Our decision here is based in part on the lack of any stated basis for denying Fischer's physical presence other than the nature of his convictions. We decline to speculate as to any such basis, and specifically we refuse to assume from the nature of Fischer's convictions that he is either "dangerous" or "an escape risk." We also decline to make assumptions regarding the cost of Fischer's presence or the difficulty in his transportation to a suitable venue, because we believe such considerations are not relevant to our analysis where they did not play any apparent role in the district court's decision. We decline to criticize the applicable rule suggesting that a movant "should" be present at such hearing, and we respect and apply our Supreme Court's decision to honor a movant's right to be present at a hearing of this nature. We decline to observe how we might have handled the matter if we were the district court; our function is to review the decision of the district court, not to compare how we might have handled the matter if we were district judges. And, finally, we decline to defer a decision in this case to a legislative committee; to the extent policy is implicit in the *Lujan* ruling, our Supreme Court has spoken, and we must honor and apply that controlling precedent.

The State urges us to conclude that telephonic participation was sufficient under these circumstances, but we fear that our embrace of this position would likely result in terminating the right of 60-1507 movants to be physically present at evidentiary hearings.

Clearly, the statute and the rule do not contemplate that movants can be routinely denied presence through telephonic substitute. In fact, the applicable rule provides to the contrary in stating that the movant "should" be produced under these circumstances. Rule 183(h) (2008 Kan. Ct. R. Annot. 248).

We express no opinion on the merits of Fischer's motion. We limit our holding to his entitlement to be present at any evidentiary hearing on his motion, and we remand with directions that the district court conduct a full evidentiary hearing on his motion with Fischer physically present for the proceeding.

Reversed and remanded with directions.

LEBEN, J., dissenting: Sometimes our citizens get frustrated with how far we go to protect the rights of criminal defendants. But when constitutional rights or core due-process principles are at stake, there may be no room for compromise. This is not such a case.

The question before us is whether a district judge may use his or her judgment to decide whether to bring a convicted murderer hundreds of miles to appear personally for an evidentiary hearing on a habeas corpus claim or whether the judge may have the defendant participate by telephone. I see no reason to remove the exercise of sound judgment in answering this question.

Let's start with some of the realities of the situation. The defendant here, Craig Alan Fischer, has three convictions for murder or attempted murder. He has been sentenced to 842 months (more than 70 years) on the underlying convictions. He's dangerous, and he's an escape risk.

Fischer filed a habeas corpus motion in the county of his most recent convictions, Hamilton County, population 2,670 (2000 Census). Hamilton County is located on the Colorado border in western Kansas. Its county seat, Syracuse, is 287 miles away from the maximum-security correctional facility in El Dorado that Fischer now calls home. I don't know how many sheriff's deputies serve the citizens of Hamilton County, but we may reasonably assume that at least two of them would have to travel on at least two separate days to bring Fischer to Hamilton County for the hearing

and then return him to El Dorado. Deputies would also need to provide security at the courthouse for the hearing and perhaps provide extra security at the local jail while he stayed there. While occupied with these tasks, of course, those deputies would not be able to perform any other duties protecting and serving the citizens of Hamilton County.

Another reality intrudes here. It's well recognized that inmates—especially those with long sentences—will file habeas cases in hope of getting the closest thing available in their world to a vacation, a trip outside prison walls. See 20 Am. Jur. Trials § 90 ("Indeed, it must be acknowledged that at times the prisoner's desire for diversion and temporary release from his place of confinement is his principal, if not his only, motive for filing the [habeas] petition."). We rightly grant an evidentiary hearing when an inmate's motion states facts that, *if true*, would entitle him or her to relief. *Swenson v. State*, 284 Kan. 931, Syl. ¶ 3, 169 P.3d 298 (2007). So, if we require the physical presence of the defendant any time he or she files a habeas motion that parrots language we've held merited a hearing in someone else's case, we will be letting Kansas inmates write their own day passes from prison at their leisure. To be sure, they'll be in custody while on this pseudo-vacation but at a significant cost to the taxpayer and at some risk to the public.

Aware of these realities, we must determine whether some legal rule or principle forbids what the district court did in Fischer's case.

Does the Constitution forbid telephone participation by an inmate in a habeas hearing? Fischer cites *Mathews v. Eldridge*, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), in support of this claim, but only for the general proposition that due process requires an opportunity to be heard at a meaningful time and in a meaningful way. The State has cited several cases holding that there's no constitutional right to be physically present at an evidentiary hearing in a habeas case. *E.g.*, *Oken v. Warden, MSP*, 233 F.3d 86, 92 (1st Cir. 2000); *Mebane v. Davies*, 1992 WL 138608, at *1 (10th Cir. 1992); *Webb v. State*, 555 N.W.2d 824, 825 (Iowa 1996); *Ex parte Mines*, 26 S.W.3d 910, 914 (Tex. Crim. App. 2000).

Those cases from other jurisdictions may be contrary to the Kansas Supreme Court's ruling in *Lujan v. State*, 270 Kan. 163, 170, 14 P.3d 424 (2000), but they certainly suggest the difficulty Fischer would have in arguing that the United States Constitution not only requires that he be allowed to participate in the hearing through telephone or video technology, but also that he physically be present in the courtroom. I have certainly not found any case even hinting at a constitutional problem in having a prisoner participate in a habeas hearing by phone or video hookup rather than in person.

Does a statute forbid telephone participation by an inmate in a habeas hearing? No, the legislature has specifically provided that "[t]he court may entertain and determine such motion without requiring the production of the prisoner at the hearing." K.S.A. 60-1507(b).

Does a court rule forbid telephone participation by a defendant in a habeas hearing? No, the Kansas Supreme Court has a rule stating only that "[t]he prisoner *should* be produced at the hearing . . . where there are substantial issues of fact as to events in which the prisoner participated." (Emphasis added.) Supreme Court Rule 183(h) (2008 Kan. Ct. R. Annot. 248). The difference between "should" on the one hand and "shall" or "must" on the other is well known, and our Supreme Court chose to use "should" in the rule. See 1A Sutherland Statutory Construction § 21:8 (6th ed. 2002) ("When the action is mandatory 'shall' should always be employed."); 3A Sutherland Statutory Construction § 57:3 (7th ed. 2008) (" 'Should' generally denotes discretion and should not be construed as 'shall.' "). Rule 183 surely doesn't require physical presence.

So where does the majority go to today to find such a rule? Its authority rests upon a single Kansas case, *Lujan*, 270 Kan. at 170, and its interpretation of that case. For the many reasons I have set out in this opinion, I would not read the holding of *Lujan* beyond the facts the court actually faced in that case.

The district court in *Lujan* held an evidentiary hearing without the participation of the defendant in person, by telephone, or by video hookup. Our Supreme Court granted review to determine

whether Lujan's due-process rights were violated because he was denied the right to be present. The court rejected the State's argument that the defendant had participated sufficiently through submission of his affidavit. The court noted that "Lujan's presence might have been helpful in cross-examining or rebutting" the testimony presented at the hearing and that his absence prevented him "from responding to the evidence presented at the hearing and from assisting his trial counsel in cross-examination." 270 Kan. at 171-72.

Our Supreme Court concluded that "the presence of the petitioner was not a question subject to the court's discretion" in these circumstances. 270 Kan. at 171. Because the court emphasized at the start of its opinion that it had granted review only "on the limited issue of whether Lujan's right to due process . . . was violated," 270 Kan. at 164, we must assume that its ruling was based on due-process notions. As Fischer noted here on appeal, what due process requires is an opportunity to be heard in a meaningful way. The district court in Fischer's case made sure that he had that opportunity. The district court in *Lujan* did not.

The district court in Fischer's case made arrangements in advance to have him participate in the hearing by telephone from El Dorado. At the beginning of the hearing, the judge confirmed that Fischer could hear what was going on. The judge told Fischer that "[i]f for any reason you can't hear, just speak up and let me know so we'll make people talk louder." The judge also told Fischer that "we'll take some breaks and let you visit privately with [your attorney] to . . . give him instructions." The judge let Fischer talk privately by phone with his attorney before each witness was excused so that Fischer could suggest additional questions.

There are only four indications in the record that Fischer had any difficulty in hearing or participating. When Fischer's attorney first began speaking, the judge interrupted him and asked him to pull the microphone closer; Fischer then said he was having trouble hearing. The judge told the attorney to talk more loudly, and there was no further complaint about hearing him as he presented an opening statement. When the State's attorney began speaking a few moments later, the judge interrupted to "make sure that Mr.

Fischer is able to hear you." Fischer said that he was having trouble hearing, and the judge had the attorney move closer to the microphone. When the first witness, Enrique Romero, was called, Fischer interrupted quickly to say that he couldn't hear the witness. The judge asked the witness to move closer to the microphone, and Romero's testimony continued without further complaint. Later, while Fischer was testifying, he said that he'd had difficulty hearing Romero.

But any failure to hear Romero would be much ado about nothing. Romero, touted by Fischer as a potential alibi witness, testified that he didn't remember when he last saw Fischer before Fischer was arrested for these crimes. Romero surely isn't a viable alibi witness. In addition, Fischer acknowledged in his testimony that he'd written a letter to his attorney before his trial noting that Romero didn't remember seeing Fischer on the day of the crime. And Parrish testified from notes in the defense case file that Fischer's wife (who is Romero's sister) had said that Romero had no knowledge of Fischer's whereabouts at the time of the crime.

In sum, after deciding to have the defendant participate in the hearing by telephone, the district court made sure that he had a full opportunity to participate. The only evidence in our record that suggests that Fischer was unable to hear any specific information was regarding Romero, whose testimony was of no help to Fischer. In addition, Fischer's attorney, not the State, presented Romero's testimony, and Fischer consulted privately by phone with his attorney before Romero was excused as a witness. Even if we take Fischer's later statement at face value that he didn't hear all of what Romero said (an assumption made by the majority), Fischer had every opportunity to tell the court or his attorney that he couldn't hear Romero during the hearing. Fischer demonstrated that he had no qualm about making statements during the hearing. In fact, Fischer, not his attorney, made the objection at the start of the hearing that he should have been allowed to be physically present for the hearing.

Our court's opinion in this case relies upon analysis of the specific words used in *Lujan*, including analysis of the word "presence." But *Lujan* didn't consider—and thus wasn't written to an-

swer—whether a defendant may meaningfully participate in a hearing for due-process purposes by telephone. All of the features of meaningful participation discussed by the court in *Lujan*—the abilities to confer with his counsel about what evidence to present and to help with cross-examination—were provided to Fischer.

The district court briefly explained why it chose not to transport Fischer from El Dorado to Syracuse. The court noted his convictions for murder and attempted murder, but it may have considered several factors. Admittedly, I can only speculate about them. But in the face of what appears to be a bright-line rule that would *never* allow the participation of a habeas movant by telephone or video hookup, we should consider whether valid reasons might exist to do so. Had I been sitting as the district judge in Fischer's case, I might well have made the same decision he did.

A district judge might well consider the criminal record of the defendant regarding the risks and dangers inherent in bringing him nearly 300 miles across Kansas for the hearing. Fischer was convicted in this case of attempted murder, attempted rape, aggravated kidnapping, and criminal possession of a firearm. In affirming the convictions on direct appeal, our court noted that Fischer shot the victim three separate times as she tried to escape his assault:

"Here, C.M., the victim, was playing golf alone in Syracuse; she was approached by defendant asking if she had seen a brown dog. When C.M. replied in the negative, Fischer pulled a gun, grabbed C.M., and dragged her 10 to 15 feet toward an area of tall weeds and sunflowers. C.M. asked to be left alone and told Fischer she would find him a woman if he were looking for one. He replied, 'It's you that I want' or 'I just want you.'

"Fischer then grabbed C.M. by the shirt and bra and attempted to pull her to the ground. C.M. wrestled away and ran, prompting Fischer to shoot her in the arm. C.M. continued running and was shot again—this time in the face. C.M. fell, and Fischer caught up with her and started pulling her back toward the golf course rough. Again, C.M. struggled free and ran, only to be shot once more in the arm.

"C.M. continued running until she spotted her father who was also at the golf course at the time. Based on C.M.'s description, Fischer was arrested." *State v. Fischer*, 2004 WL 1609116, at *2 (Kan. App. 2004) (unpublished opinion), *rev. denied* 278 Kan. 848 (2004).

In addition to those crimes, the presentence investigation report showed that Fischer had convictions for two counts of second-

degree murder, aggravated battery, and attempted escape, among other crimes. The defendant's sentence in this case itself indicates that the sentencing judge regarded Fischer as a dangerous criminal: the sentences on his four crimes of conviction were run consecutive to each other for a controlling sentence of 842 months, more than 70 years. With convictions for murder, attempted murder, and attempted escape, and with a lengthy sentence, the district judge knew that real risks were involved with transporting Fischer twice across Kansas to attend a court hearing that presumably lasted no more than 2 or 3 hours.

A district judge might also be familiar with (and give consideration to) the resources of the local sheriff to transport prisoners and to provide courthouse security. Public resources are not infinite, and we do not know what the district court knew about the resources of Hamilton County. I do not suggest that resource limitations may eliminate basic rights; I merely suggest that they may properly be considered in making all sorts of decisions that district judges routinely make in ensuring that litigants receive a fair hearing in civil cases.

And this was a civil case, not a criminal one. See Supreme Court Rule 183(a) (2008 Kan. Ct. R. Annot. 247); *Smith v. State*, 22 Kan. App. 2d 922, 923, 924 P.2d 662 (1996). The parties and the district court all recognized this as they prepared for the evidentiary hearing. In lieu of in-person testimony, the parties presented a transcript of the evidentiary deposition of Gene Parrish, Fischer's defense attorney at trial. Parrish was obviously a key witness in the habeas proceeding since Fischer claimed Parrish's representation had been inadequate; his testimony obviously would have been presented in person in a criminal case. Significantly, Fischer was not present at the deposition. Neither Fischer nor his attorney made any objection about Fischer's lack of attendance. Fischer's attorney presumably arranged for the deposition; he conducted the direct examination of Parrish, and the State cross-examined him. Had Fischer's direct participation been critical, his attorney could instead have subpoenaed Parrish to attend the evidentiary hearing in which Fischer participated by phone.

From my vantage point, the district court's decision to have Fischer participate by telephone was well within the bounds of trial court discretion. His presence in person would not have added anything of significance. By phone, he was able to listen to the witnesses, to consult with his attorney about each witness' testimony before that witness was excused, and to testify fully. While the district judge didn't have the chance to observe Fischer's demeanor in person in the courtroom, the judge also didn't have the chance to view Parrish's demeanor during his deposition. And Fischer's counsel arranged the deposition Fischer didn't attend—without objection—even though Parrish was almost surely the most important witness to Fischer's habeas claim. Trial judges in civil bench trials receive evidence in a variety of ways, including depositions and even telephone or video hookups, some of which lessen the ability to observe the witness, but we have no caselaw suggesting that this violates the due-process rights of civil litigants. In context, especially considering that Fischer didn't consider his attendance at Parrish's deposition critical to his effort, the district court's decision was a reasonable one. I also find its stated reason adequate; no prior decision of our court had announced a strict findings requirement for the exercise of discretion in this circumstance.

As a district judge, I had the opportunity to have witnesses appear by telephone on many occasions. When I had a civil case involving a convicted murderer who was suing his former defense counsel directly, I chose to have him participate in hearings by telephone. That did not inhibit his ability to present his case. See *Canaan v. Bartee*, 272 Kan. 720, 35 P.3d 841 (2001) (reversing the district court's initial ruling in favor of the inmate who had appeared only by phone). I have also observed video arraignment proceedings in which criminal defendants have appeared at non-evidentiary hearings by video link to the courtroom. In those cases, the defendants had the ability to confer with their defense attorneys on a separate telephone line outside the hearing of the court and other parties. I have also toured state-of-the-art courtrooms around the country, and technological innovations that allow witnesses to appear in court from remote locations are increasingly

available with a high level of quality. Given the ease with which an evidentiary hearing may be obtained in a habeas case, I think it unwise to preclude altogether all present and future options for telephonic or video participation in habeas cases, and I do not believe that the holding in *Lujan* requires that we do so.

The majority cites to Supreme Court Rule 145 as a backstop to its ruling, but that rule does not come into play because there is a statute and a court rule more closely on point. Both K.S.A. 60-1507(b) and Supreme Court Rule 183(h) deal exclusively with the hearing of habeas cases, and neither require the in-person attendance of the inmate even though both contemplate the presentation of evidence. A specific statute or rule controls over a more general one. *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 (2007), *cert. denied* 555 U.S. 937 (2008). Surely, when the inmate is not required to be physically present and it's a court-tried case, the district court does not abuse its discretion by allowing the inmate to participate in the hearing by telephone. When Rule 145 is applicable, a district court is not *required* to permit telephonic participation in a trial on the merits. *In re Estate of Broderick*, 286 Kan. 1071, 1080, 191 P.3d 284 (2008). But a habeas proceeding is governed by K.S.A. 60-1507(b) and Rule 183(h), and a district court should have the discretion to allow telephonic participation in appropriate circumstances. That certainly should be the case here. Not only was this a matter tried to the court, not a jury, but a key witness' testimony was presented by Fischer through a deposition transcript, which precluded observation of the witness while testifying.

Even if the physical presence of the defendant is to be required, I see no cause for reversing the district court's decision in this case. Fischer makes no claim of any information that he would have presented had he been present in person that he didn't present through his attorney and his telephonic testimony. Fischer himself presented the testimony of Parrish by deposition; thus, Fischer cannot argue that it was important for the district judge to see all of the witnesses in person to judge credibility. Structural error—the sort for which we reverse even though the error appears to have been harmless—is the exception, not the rule, and it is found

in only very limited cases. See *Pabst v. State*, 287 Kan. 1, 13, 192 P.3d 630 (2008). Indeed, the harmless-error rule applies even to violation of a defendant's constitutional right to confront the witnesses when that right is violated in a criminal trial. See *State v. Noah*, 284 Kan. 608, 162 P.3d 799 (2007). I would find here that any error in having Fischer appear by telephone rather than in person was harmless. The severity of this violation—if it's a violation at all—is much less than the failure to have the defendant participate in the evidentiary hearing at all in *Lujan* or than the violation of a criminal defendant's confrontation rights. I would not send Fischer's case back for the district judge to sit through the same testimony a second time with nothing changed except that Fischer would now be sitting in the courtroom.

One final point. I certainly respect my colleagues, who are merely trying to ensure that fair hearings that recognize the rights of inmates are provided. While I disagree with their reliance on *Lujan*, its language may well support them. But there's a broader question here about who should make the sort of decision that is made in the court's opinion today. The majority has laid down what appears to be virtually a bright-line rule that will require that all prisoners be physically transported to all substantive evidentiary hearings in habeas cases. We have decided this case on the basis of two pages of briefing on this issue by Fischer's attorney and four pages of responsive briefing by the State. It seems to me that this sort of broad policy question is better decided with more comprehensive information, the sort of information that can be gathered, reviewed, and processed with public input by a legislative committee. The legislature has already spoken on this issue in K.S.A. 60-1507, which provides that the prisoner need not be physically present. To be sure, we as judges have substantial expertise on what ingredients are necessary for fair hearings, and there will be times when we must override legislative directives to protect constitutional rights. We must be careful, however, to do so only when necessary.

The court's opinion in this case will undoubtedly become one of the most widely read decisions in every prison and jail library in Kansas. It didn't need to be.