245 P.3d 1057 (2010)
44 Kan.App. 2d 851
DEUTSCHE BANK NATIONAL TRUST CO., Appellee,
v.
Douglas SUMNER, et al., Appellants, and
Board of County Commissioners of Reno County, et al., Defendants.
Douglas Sumner and Carol Sumner, Appellants,
v.
Ameriquest Mortgage Company and Gwendolyn Creel, Appellees.
No. 101,424.
Court of Appeals of Kansas.
October 29, 2010.
*1059 Barry L. Arbuckle, of Wichita, for appellants.
Clayton T. Norkey, of Shook, Hardy & Bacon LLP, of Kansas City, MO, for appellees.
Before GREENE, P.J., GREEN and STANDRIDGE, JJ.
GREENE, J.
Doug and Carol Sumner appeal the district court's dismissal of their claims under the federal Truth in Lending Act (TILA) and the Kansas Consumer Protection Act (KCPA), which they had filed as counterclaims in response to a foreclosure action by Deutsche Bank National Trust Company (Deutsche Bank) on their residence in Hutchinson. They argue that the district court erred in ruling their TILA claims were barred either by the statute of limitations or equitable estoppel and that the court erred in dismissing their remaining claims under the KCPA due to discovery abuse. We hold that some of the Sumners' claims were erroneously dismissed but all were subject to dismissal as an appropriate discovery sanction. Accordingly, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND
On September 23, 2004, the Sumners closed on a home loan with Ameriquest Mortgage Company (AMC) for the principal amount of $180,000 at 9.5% variable interest secured by a mortgage on their home on Obee Road in Hutchinson, Kansas. Later, the Sumners would claim that AMC's employee, Gwendolyn Creel, told them the loan would be a 30-year fixed rate mortgage with a 6.5% interest rate. The Sumners also claimed Creel promised to provide insurance on the home as part of the mortgage package.
The Sumners' loan was assigned by AMC to Deutsche Bank in June 2006. The servicing of the Sumners' loan was later assigned, *1060 sold, or transferred from AMC to Citi Residential Lending, Inc.
In March 2005, AMC began sending the Sumners notices that their account was overdue, and in July 2005, suit was filed to foreclose on the mortgage. The Sumners filed individual answers and counterclaims pro se to the petition in September 2005, claiming slander, slander per se, libel, libel per se, and fraud (these claims were all abandoned upon the filing of an amended counterclaim). Notably, the answers included a request for payment of money damages, a count entitled "set-off," and a demand for "an Order requiring plaintiff to reinstate plaintiff's note and mortgage."
Deutsche Bank replied to Doug Sumner's answer and counterclaim in October 2005, but served the answer only on Doug at his joint address with Carol. She then moved for default judgment because of Deutsche Bank's failure to answer her separate, albeit identical, answer and counterclaim. Deutsche Bank's counsel admitted that "[d]ue to inadvertence and/or excusable neglect," Carol's answer and counterclaim was "misplaced and Plaintiff failed to timely file its Answer thereto." Deutsche Bank subsequently filed an answer to Carol's counterclaim, and Deutsche Bank substituted new counsel in the case.
The Sumners objected to Deutsche Bank's substitution of counsel and belated answer, and the parties held a telephonic conference on the Sumners' objection. Even though Carol was not joined in the phone conference, the district court ruled that the Sumners could file their counterclaims out of time; the Sumners' motion for default judgment based on the belated answer to Carol's counterclaim was denied; and the Sumners' objection to substitution of Deutsche Bank's counsel was also denied.
In June 2006, Doug filed a motion for leave to file an amended answer, counterclaim, and third-party petition. He requested a hearing be held on June 29, 2006. The Sumners then filed a motion to continue the requested hearing "for at least ninety (90) days, and or until such time as this defendant has retained legal representation." Doug wrote to Deutsche Bank's counsel that "I believe that with counsel, the Court and yourself will definitely benefit greatly, by fewer delays caused by our no longer moving pro se in this action." The Sumners eventually retained counsel, who then requested the scheduled hearing be continued.
Counsel for the Sumners then filed an amended answer with a counterclaim and cross-claims. The amended filing was made in August 2006; it included a counterclaim against Deutsche Bank, AMC, and Creel, based on violations of the TILA, and the KCPA, and sought damages, statutory penalties, rescission, and other relief.
Deutsche Bank responded to the counterclaim with a motion to dismiss, which was granted by the district court as to the TILA claims because they were filed outside of TILA's 1-year statute of limitations. The court found that only the Sumners' KCPA claims survived Deutsche Bank's motion to dismiss.
Mediation was attempted in October 2006. According to the Sumners, the parties "made progress in the mediation but Ameriquest [AMC] insisted upon an inspection and appraisal of the house prior to completion of the mediation." The inspection did not take place as scheduled, in part because Carol wanted to "put the house in better order." After that, mediation apparently broke down, with the Sumners claiming "Ameriquest has failed and refused to continue negotiations in good faith and has misled the Sumners regarding their willingness to negotiate."
In January 2007, the district court allowed the Sumners' counsel to withdraw from the case. The Sumners said that it would take them at least 90 days to obtain new counsel, and in April 2007, Barry L. Arbuckle entered his appearance as the Sumners' new counsel. Arbuckle subsequently requested an additional 90 days to complete discovery and a continuance in the trial setting until September 2007. Notably, the Sumners' previous counsel filed an attorney's lien against the Sumners for $10,897.55.
Deutsche Bank first attempted to depose the Sumners on July 12, 2006. They were never deposed despite numerous attempts. When they sought to continue their depositions *1061 after the seventh formal notice in March 2008, the district court ordered them to submit to depositions by March 20, 2008, and to file documentary evidence to support their most recent alleged inability to be sworn for deposition. These orders went unheeded.
The perpetual delay caused Deutsche Bank to file a motion to compel discovery and several motions for sanctions against the Sumners for their failure to comply with discovery requests. When the court finally ruled on Deutsche Bank's motion for sanctions, Judge Timothy J. Chambers stated that "[t]he continual course of conduct of the Defendants [the Sumners] in this case is found by the Court to be willful and deliberate, interfering in the efficient administration of justice." Chambers wrote:
"It is with reluctance the Court makes its ruling, but after careful consideration of the appropriate standards to be applied and pursuant to K.S.A. 60-237, the Court grants the motion for sanctions of the Plaintiff and dismisses with prejudice the remaining claim of the Defendants as well as granting summary judgment on the claim of the Plaintiff."
Judge Chambers issued the order imposing sanctions against the Sumners after they moved to disqualify him, but he later recused himself from the case. Judge Joseph L. McCarville, III, was assigned to the case after Chambers' recusal.
McCarville held a telephone conference on May 23, 2008, to discuss Chambers' order of sanctions against the Sumners. McCarville noted that Chambers' "conclusions are supported in the record. They're logical." Chambers' ruling, McCarville stated, "was not based upon merely what happened in the first part of March of 2008, but it was as a result of that being more or less the final straw." McCarville adopted Chambers' decision effectively upholding the grant of summary judgment to Deutsche Bank and dismissing the Sumners' remaining claims with prejudice, as well Chambers' decision to dismiss the Sumners' TILA claims.
The Sumners then moved to have McCarville disqualified from the case. The motion was denied, and the court ordered the foreclosure and sale of the Sumners' home.
The Sumners timely appeal.

DID THE DISTRICT COURT ERR IN DISMISSING THE SUMNERS' PURPORTED CLAIMS FOR RECOUPMENT AND SETOFF?
The Sumners argue the district court improperly dismissed their claims under the TILA. In dismissing the TILA claims, the court noted: "Truth in Lending Act claims have a 1-year statute of limitations. . . . The claims were filed well in excess of the one-year limitation. Even if the claims related back to the original counterclaim, the claims would still fall outside the one-year statute of limitations."
Both parties agree that the district court's interpretation of the TILA's statute of limitations is subject to unlimited review because it involves a question of law. See Law v. Law Company Building Assocs., 42 Kan.App.2d 278, 283-84, 210 P.3d 676 (2009), rev. granted on other grounds 290 Kan. ___ (September 7, 2010).
The Sumners argue their claims for recoupment or setoff are not barred by the 1-year statute of limitations under the TILA. They rely on 15 U.S.C. § 1640(e) (Supp. III 2009), which states:
"Any action under this section may be brought . . . within one year from the date of the occurrence of the violation. . . . This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law."
This language "makes it clear that one sued to collect a debt may assert, as recoupment or set-off, any counterclaim for violation of the Federal Truth in Lending Disclosure Law regardless of the one year limitation." First State Bank of Crossett v. Phillips, 13 Ark.App. 157, 161, 681 S.W.2d 408 (1984) (citing United Missouri Bank of Kansas City v. Robinson, 7 Kan.App.2d 120, 638 P.2d 372 [1981]). This is consistent with *1062 federal common law, which has long acknowledged that a defense which is termed recoupment is never barred by a statute of limitations so long as the main action is timely. United Missouri Bank, 7 Kan.App.2d at 123, 638 P.2d 372. Noting the broad remedial purpose of the TILA, the United Missouri Bank court concluded that a claim of recoupment is not barred by the 1-year statute of limitations. 7 Kan.App.2d at 125, 638 P.2d 372. It would certainly circumvent the TILA and the policy of prompt vindication of contractual rights if a creditor could simply sit on its claim for a year until the applicable statute of limitations runs on any and all violations under the TILA. 7 Kan.App.2d at 125, 638 P.2d 372.
Under 15 U.S.C. § 1640(a), if Deutsche Bank violated the TILA's disclosure requirements, the Sumners could potentially recoup (1) any actual damage sustained and (2) twice the amount of any finance charge. The Sumners amended counterclaim sought to recover statutory damages, actual damages, twice the finance charge, and reasonable attorney fees based on the TILA disclosure violations. Although the claims may not be artfully pled, they are set forth in enough detail to be recognized as TILA claims intended to cut down the debt owed by the Sumners to Deutsche Bank.
We conclude that the Sumners' claims for recoupment or setoff were improperly dismissed by the district court based on the statute of limitations. These claims should have survived, at least until the dismissal of their entire action for discovery abuse. We address that eventuality below.

DID THE DISTRICT COURT ERR IN DISMISSING THE SUMNERS' RESCISSION CLAIMS DUE TO EQUITABLE ESTOPPEL?
The Sumners next claim that the district court erred in dismissing their TILA rescission claims due to equitable estoppel. There remains, however, a factual question whether the Sumners actually sought to rescind the agreement at all. The Sumners claim they sent a notice of rescission to Deutsche Bank on September 26, 2004. It was not until May 2006 that the Sumners apparently remembered that they had attempted to rescind the agreement. Doug wrote to Deutsche Bank's counsel:
"[By the way], I want to thank you for asking for past records. It was during this search that I found our Notice Of Cancellation Of Transaction to Ameriquest. Coupled with our claims against Ameriquest Mortgage Company, which also pass through to DEUTCHE, our TILA claims will no doubt bear fruit."
Prior to this discovery, none of the communications between the parties and none of the pleadings filed in this litigation referenced the Sumners' September 26, 2004, rescission letter. The claimed letter of rescission is written, signed, and dated by Doug and Carol Sumner. There is no corroborating evidence that the letter was actually sent to AMC or that it was even written in 2004. The only copy of the rescission letter in the record is one that the Sumners sent to their counsel after they claimed to have found it in their archives. Most importantly, the Sumners certainly did not act at any time consistent with an attempt to rescind the transaction in their subsequent communications with Creel or in their initial pleadings in this litigation.
In any event, the Sumners argue on appeal that the district court improperly found that equitable estoppel precluded them from pursuing their TILA claims for rescission. The application of equitable estoppel rests within the sound discretion of the district court. Shaffer v. City of Topeka, 30 Kan.App.2d 1232, 1236, 57 P.3d 35 (2002). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted.]" Unruh v. Purina Mills, 289 Kan. 1185, 1202, 221 P.3d 1130 (2009).
After the Sumners moved to have the original dismissal of their TILA claims reconsidered, the district court found that equitable estoppel barred their claim:
"The Truth in Lending and all rescission-related claims are further barred by the doctrines of equitable estoppel and waiver, *1063 the Court having found that Wilson v. Homeowners Loan Corp., 263 F.Supp.2d 1212 (E.D.Mo.2003) to be persuasive authority and that the Sumners have admitted demanding disbursement of their loan proceeds after allegedly sending a rescission notice."
Indeed, in Wilson v. Homeowners Loan Corp., 263 F.Supp.2d 1212, 1219 (E.D.Mo. 2003), the court noted: "[T]here is nothing in the TILA that precludes applying the equitable principles of estoppel and waiver."
For equitable estoppel to bar their claims, the Sumners, by their acts, representations, admissions, or silence when they had a duty to speak, must have induced Deutsche Bank to believe certain facts existed. See Cosgrove v. Young, 230 Kan. 705, 717, 642 P.2d 75 (1982). Deutsche Bank must show that it rightfully relied and acted upon such belief and would now be prejudiced if the Sumners were permitted to deny the existence of such facts. See 230 Kan. at 717, 642 P.2d 75. In other words, for equitable estoppel to apply, "the party asserting it must at least show: (1) misrepresentation; and (2) detrimental reliance." 230 Kan. at 718, 642 P.2d 75.
Deutsche Bank argues that the Sumners committed several acts that induced its belief that the Sumners sought to enforce the mortgage contract. First, the Sumners sent e-mails "and made several phone calls insisting that the loan be funded, all after their alleged rescission[.]" On September 30, 20044 days after allegedly rescinding the mortgageDoug Sumner e-mailed Creel and said:
"I tried to get back to you several times yesterday, as you know. . . .
"By now, you know what the exact amount of funds are available. Please let me know, and when I can verify completion of the wire transfer. . . .
"Please do not leave me hanging."
Then, on October 1, 2004, Doug e-mailed Creel again: "Have not heard from your ins[urance] agent. Is the 14,854.48 the amount they will be wiring to our business account?" Later on October 1 in another e-mail, Doug asked Creel if the loan disbursement would hit their bank account that day; Doug said: "I do NOT want to be a pest. So, tell me plainly, is this going to hit our account today, or not?" Doug sent another e-mail on October 20, 2004, saying: "Your `gal' still has not contacted us concerning the homeowners ins[urance]. Please have her get with us right away. This was part of our agreement with you and Ameriquest. . . . So, I want to getthis [sic] taken care of, . . . pretty please?"
The record does not show that either of the Sumners contacted Creel or AMC to discuss or confirm their rescission, nor does it contain a mention of any attempt to rescind the transaction until Doug says he "found" their rescission notice 2 years after sending it. Further, as Deutsche Bank notes, the Sumners "accepted the proceeds, made loan payments without protest, and voluntarily acted in accordance with normal protocol for a non-rescinded loan." Finally, the Sumners original answers and counterclaims sought to reinstate the mortgage transaction. These acts no doubt induced Deutsche Bank to believe that the Sumners had no interest whatsoever in rescinding the transaction.
Based on the acts by the Sumners, Deutsche Bank rightfully relied on its belief that no rescission was sought by the Sumners, thus closing the transaction and disbursing the loan proceeds. Deutsche Bank argues it would be prejudiced if the Sumners were now permitted to assert their rescission claim. We agree with Deutsche Bank, that "a party with full knowledge of the facts, [that] accepts the benefits of a transaction or contract, may not subsequently take an inconsistent position to avoid corresponding obligations or effects," citing Levi Strauss & Co. v. Sheaffer, 8 Kan.App.2d 117, 650 P.2d 738 (1982). In Levi Strauss, this court held: "`"The doctrine of equitable estoppel requires consistency of conduct, and a litigant is estopped and precluded from maintaining an attitude with reference to a transaction involved wholly inconsistent with his previous acts and business connection with such transaction." [Citations omitted.]'" 8 Kan.App.2d at 122, 650 P.2d 738.
*1064 The Sumners rely on Semar v. Platte Valley Federal S & L Ass'n, 791 F.2d 699, 706 (9th Cir.1986), and Rachbach v. Cogswell, 547 F.2d 502, 505 (10th Cir.1976). Neither case has application to these facts. In fact, these cases are so clearly inapplicable that neither case merits further discussion by this court.
The Sumners also argue that Deutsche Bank's alleged unclean hands should preclude it from claiming estoppel. As proof of Deutsche Bank's unclean hands, the Sumners rely on a class action allegedly pending or resolved in Alameda County, California. The Sumners claim this case established misconduct by AMC on a nationwide scale between 1999 and 2005. The Sumners cite to a journal entry in that case but did not provide it to the district court or to this court. At one point, the Sumners' counsel told the court:
"I've got a copy of that journal entry, but judge, I shouldn't have to do that. I've given the court the case number, the county, I'm sure the court has better research facilities than I do. That's there for you to see what Ameriquest, this innocent plaintiff, has done to people throughout this country. If you were to do a computer search, Your Honor, you would find literally scores of cases all around the country dealing with Ameriquest over these same types of activities."
To the extent the Sumners expect this court to consider the alleged class action, they were obligated to include such evidence in the record. Moreover, the Sumners have never indicated whether they were members of the purported class, whether the class was certified, whether liability was established, and whether principles of collateral estoppel would apply. For all these reasons, we decline to consider the argument. See Adams v. Via Christi Regional Med. Center, 270 Kan. 824, 838, 19 P.3d 132 (2001). ("An appellant . . . has the duty to designate a record sufficient to establish the claimed error. Without an adequate record, the claim of alleged error fails.").
We conclude that the district court did not err in applying equitable estoppel and barring the Sumners' rescission claims under TILA.

DID THE DISTRICT COURT ERR IN DISMISSING THE SUMNERS' CLAIMS DUE TO DISCOVERY ABUSE?
Finally, the Sumners argue on appeal that the district court erred in dismissing the Sumners' remaining counterclaims due to discovery abuse under K.S.A. 60-237. Generally, we review a district court's imposition of discovery sanctions for an abuse of discretion. Canaan v. Bartee, 272 Kan. 720, 726, 35 P.3d 841 (2001). The factual predicate for the court's imposition of its sanction award and the basis for the court's ultimate conclusion is best stated in the district court's order:
"The present foreclosure action has now been on file for well over two years with the depositions of the Defendants still not having been taken by Plaintiff's counsel. The depositions were first scheduled in July of 2006. The Sumners sought continuances of their respective depositions with Plaintiff's counsel agreeing to reschedule the depositions.
"The depositions were rescheduled on March 19 and 20, 2007. The day before the depositions, the Sumners indicated by fax they were not going to appear and failed to do so.
"The depositions were next set March 29 and 30, 2007. The Defendant's filed motions for continuance of the depositions. The Court did not grant the motions. Counsel for the Plaintiff drove to Hutchinson from Kansas City and spent one night in a local hotel/motel with neither Defendant appearing for their respective deposition.
"The depositions were rescheduled for August 23 and 24, 2007. The day before the depositions, counsel for the Defendants indicated the Defendants would not appear for the depositions. Counsel for the Defendants indicated the Defendant had been called out of State on a business emergency and that counsel had failed to formally advise the Defendants of the date of the depositions.
"The depositions were rescheduled for March 6, 2008. Defendant Doug Sumner appeared at the deposition under the influence *1065 of a prescription drug. This Court was contacted by telephone where it was indicated to the Court by Defendants' counsel that Mr. Sumner was unable to testify truthfully in response to questions propounded by Plaintiff's counsel. The depositions were continued.
"The depositions were reset to March 18 and 19, 2008. On March 14, 2008, counsel for the Sumners filed a motion for continuance of the March 18 and 19 depositions. It was indicated Mr. Sumner remained on pain medication for a tooth extraction occurring on March 5, 2008. It was indicated the dentist was on vacation and an affidavit could not be provided before March 16, 2008. Also, it was indicated Mr. Sumner needed to be out of State for work related activities. As of March 19 the affidavit has not been supplied the Court, neither has the report from Mr. Sumner's treating physician as to the effect of Mr. Sumner's medications.
"Initially, both Defendants appeared in this action pro se. The Petition was originally filed in July of 2005. In June of 2006 Elizabeth Carson entered her appearance as legal counsel on behalf of the Defendants.
"In February 2007 Elizabeth Carson was allowed to withdraw as counsel for the Defendants. The Court notes that the Defendants made accusations against Ms. Carson that if had been made by legal counsel the Court would have been compelled to file an ethics complaint against the individual making the claims.
"Present counsel for the Defendants entered his appearance initially in April of 2007. Mr. Sumner has indicated the Court's previous statements in regards to the positive effect of the Sumners obtaining counsel and not proceeding pro se. The Court's comments were directed to having the assistance of counsel in seeing the matter was proceeded with in a timely matter. The situation has not improved with the entry of appearance of counsel. As the Court has previously indicated, the Sumners have experience in pro se litigation having in excess of thirty entries in the Court's computer system. The Sumners have been involved in litigation as both plaintiff and defendants including the filing of a medical malpractice action pro se.
"The Sumners have represented themselves in four previous foreclosure actions involving the same property. In each of the cases the Sumners filed extensive pleadings on their own behalf.
. . . .
"In 98 C 292 the Sumners filed counterclaims alleging lack of service, fraud, extortion and forced insurance coverage among other claims. Counsel for the Plaintiff sought sanctions when he flew to Wichita and the Sumners did not appear for properly noticed depositions. In 99 C 334 the Sumners filed counterclaims alleging extortions, fraud, libel, slander, [and] forced insurance coverage among other claims. The Sumners sought and obtained recusal of Judge Rome and Judge Lyle. In 02 C 516 the Sumners alleged lack of service and fraud among other claims.
"In 03 CV 412 the Sumners counterclaimed alleging lack of service, fraud, and forced insurance among other claims. The Sumners, as in one of the earlier foreclosure cases, sought default judgment on their counterclaims when counsel, as in the previous case, indicated no notice of the counterclaims was attempted by the Sumners.
"The present action was filed in July of 2005. The court file now contains four volumes. In their original answers and counterclaims the Sumners allege failure of the Plaintiff to maintain insurance, slander, libel per se, and fraud among other claims.
"In August of 2006 Ms. Carson filed an amended answer and counterclaim on behalf of the Sumners in essence starting the case over again. The relationship between Ms. Carson and the Sumners deteriorated to the point Ms. Carson was allowed to withdraw which necessitated more delay. Ms. Carson withdrew January 31, 2007.
"Mr. Arbuckle entered his appearance in April 2007. The Court has continued the trial of the matter after indicating the trial would not be continued to allow the Sumners *1066 and counsel to prepare. As of March 19, 2008 the Defendants' depositions have not been taken.
"The Court in this opinion lists primarily the efforts dealing with the taking of the depositions of the Defendants. The Plaintiff's various motions for sanctions and renewal of motions for sanctions list out difficulties in proceeding in general.
"K.S.A. 60-237 allows sanctions to be ordered for failing to comply with discovery. In addition to findings of contempt, assessment of costs and attorney fees, the Court is authorized to dismiss claims of a party or to render judgment by default against the noncompliant party.
"The Court is aware of the consideration that must be given before sanctions of dismissal and or granting of summary judgment are ordered. Default judgment as a sanction should be imposed only as a last resort when lesser sanctions are clearly insufficient to accomplish the desired end. CANAAN v. BARTEE, 272 Kan. 720 [35 P.3d 841] (2001). The following tests are identified in determining whether the district court has abused its discretion in granting a default judgment for failure to comply with discovery orders: (1) whether the discoverable material goes to a dispositive issue in the case; (2) whether alternative sanctions sufficient to protect the party seeking discovery were available; and (3) whether the requested information was merely cumulative or corroborative. SUPRA.
"The Court finds the actions of the Defendants demonstrate a deliberate course of delay. The Court finds based upon the cross-claims and various allegations made by the Defendants at various junctures throughout the course of litigation that the discoverable material sought goes to the dispositive issues of the case. The Court finds alternative sanctions sufficient to protect the Plaintiff are not available and the requested information is not cumulative or corroborative. The Court does note Defense Counsel has now filed a motion to quash subpoenas against the Defendants that require their presence at their depositions.
"The Court finds the failure to comply with discovery is not a result of inability, nor reckless indifference or negligence. The continual course of conduct of the Defendants in this case is found by the Court to be willful and deliberate, interfering in the efficient administration of justice.
"The Court finds under the unique facts of this case including repeated attempts by the Court during the course of the litigation to accommodate the Sumners that lesser sanctions would not be appropriate. It is with reluctance the Court makes its ruling, but after careful consideration of the appropriate standards to be applied and pursuant to K.S.A. 60-237, the Court grants the motion for sanctions of the Plaintiff and dismisses with prejudice the remaining claim of the Defendants as well as granting summary judgment on the claim of the Plaintiff."
We begin our analysis by examining K.S.A. 60-237(b)(2), which provides in material part:
"If a party . . . fails to obey an order to provide or permit discovery . . ., the judge before whom the action is pending may make such orders in regard to the failure as are just, and among others the following:
. . . .
"(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."
There is apparently no dispute that the district court had made specific orders for the Sumners to provide or permit discovery. In its telephonic hearing on March 6, 2008, the court ordered that the Sumners file a formal motion to continue the depositions and include "an affidavit provided from the dentist indicating what he believes the effects of the medication are, and if he believes there's any time between now and the end of the month in which Mr. Sumner will not be required to be on medication." The court also ordered that the depositions "be reset according to Mr. Norkey's schedule at a location of his choice prior to the end of discovery, *1067 which is still set on March 20th. . . ." Before the telephone conference ended, the court reiterated its order that "the Sumners will make themselves available for a deposition at a location of Mr. Norkey's choosing within that 45 day period [before discovery was to close]." None of these orders was obeyed.
Where the evidence shows that a party has acted in deliberate disregard of reasonable and necessary court orders and the party is afforded a hearing and an opportunity to offer evidence of excusable neglect, the imposition of a stringent sanction will not be disturbed. Shay v. Kansas Dept. of Transportation, 265 Kan. 191, 194, 959 P.2d 849 (1998). Both Kansas appellate courts have recognized the severity of judgment by default as a sanction for failure to comply with discovery orders, and each court has emphasized the importance of careful exercise of judicial discretion before imposition of that sanction. Dismissal of a lawsuit should only be used as a last resort when other lesser sanctions are clearly insufficient to accomplish the desired end. See Burkhart v. Philsco Products Co., 241 Kan. 562, 576-77, 738 P.2d 433 (1987); Fields v. Stauffer Publications, Inc., 2 Kan.App.2d 323, 327-29, 578 P.2d 1138, rev. denied 225 Kan. 843 (1978).
Our Supreme Court has identified the following factors in determining whether the district court has abused its discretion in granting default judgment for failure to comply with discovery orders: (1) Does the discoverable material go to a dispositive issue in the case? (2) Are alternative sanctions sufficient to protect the party seeking discovery available? and (3) Is the requested information merely cumulative or corroborative? Canaan, 272 Kan. at 727, 35 P.3d 841; Hawkins v. Dennis, 258 Kan. 329, 341, 905 P.2d 678 (1995); see also Wenger v. Wenger, 239 Kan. 56, 59-61, 716 P.2d 550 (1986) (counterclaims dismissed and default judgment entered for continued failure to make discovery); Binyon v. Nesseth, 231 Kan. 381, 383-85, 646 P.2d 1043 (1982) (default judgment entered after repeated unsuccessful attempts to force defendant to comply with discovery orders).
The United States Court of Appeals for the Tenth Circuit has outlined five factors to be considered before ordering dismissal as a sanction under parallel Rule 37 of the Federal Rules of Civil Procedure. That court discussed the need for the aggravating factors to outweigh the judicial system's strong predisposition to resolve cases on their merits to justify dismissal as an appropriate sanction:
"Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: `(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant,' Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1465 (10th Cir.1988) (quoting Meade [v. Grubbs], 841 F.2d [1512,] 1521 n. 7 (10th Cir.1988)); (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, see, e.g., Willner v. University of Kansas, 848 F.2d 1023, 1030 (10th Cir.1988) (per curiam), cert. denied, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989); [In re] Standard Metals, 817 F.2d [625,] 629 [10th Cir. (1987)]; Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863, 110 S.Ct. 180, 107 L.Ed.2d 135 (1989); Spiller v. U.S.V. Labs., Inc., 842 F.2d 535, 538 (1st Cir.1988); and (5) the efficacy of lesser sanctions. See Ocelot Oil, 847 F.2d at 1465; Meade, 841 F.2d at 1520; Taylor v. Medtronics, Inc., 861 F.2d 980, 986 (6th Cir.1988). `Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction.' Meade, 841 F.2d at 1521 n. 7 (citations omitted)." Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir.1992).
The court recognized that "[t]hese factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction," and also that the district court "should ordinarily evaluate these factors on the record." 965 F.2d at 921.
Applying the factors suggested by our Supreme Court, we are convinced the dismissal sanction was appropriate. First, *1068 we note that the depositions of the Sumners went to a dispositive issue in this case. Second, alternative sanctions were not sufficient to protect Deutsche Bank from further delay and harassment given the severity and persistence of the Sumners' misconduct. Third, the request to depose the Sumners was not cumulative of other evidence, but rather the depositions were critical to understanding and testing the counterclaims made against Deutsche Bank.
If we apply the Tenth Circuit factors here, we remain convinced that the dismissal sanction was appropriate. First, we note that Deutsche Bank had suffered significant prejudice due to the delays in deposing the Sumners, including the inability to obtain relief on the foreclosure action for more than 2 years and the enormous cost of prolonged and vigorous litigation throughout this period. Second, we consider the failure of the Sumners to make themselves available to be deposed after at least eight genuine attempts over this period as a significant interference with the judicial process. Third, we deem the Sumners to be culpable for the delays; counsel may share some of this culpability, but the Sumners were culpable in the first instance. Fourth, the only factor weighing in favor of the Sumners was the district court's failure to issue a specific warning to the Sumners that their failure to obey the discovery orders would result in a dismissal. Fifth, we agree with the district court in concluding that lesser sanctions would not serve to adequately protect Deutsche Bank from further delay and harassment.
The Sumners argue on appeal that dismissal was not appropriate because they did not have the ability to comply with the court's orders because their dentist was out of town and the need for medication continued until the court's deadline for discovery completion. The problem with this argument is that the Sumners conduct between March 6 and 20, 2008, must be viewed in context with their conduct throughout the litigation. As the district court noted, the Sumners had exhibited a "deliberate course of delay" throughout the litigation, and the conduct in March 2008 must be viewed as the proverbial "straw that broke the camel's back." Of particular interest, however, is that the order to provide the dentist's affidavit has never been obeyed, not only during the dentist's alleged vacation, but at any time thereafter. Because of this noncompliance, the Sumners have also never supported their excuse for failure to comply with the court's order for their depositions prior to March 20, 2008.
The Sumners also argue on appeal that dismissal was not appropriate because they were not afforded a hearing on the matter. Yet, this court has confirmed within the record on appeal that the Sumners were afforded not one but several hearings on the matter, beginning with Judge Chambers' telephone conference on March 6, 2008, and ending with the final hearing before Judge McCarville on August 8, 2008. Moreover, the Sumners submitted numerous briefs and affidavits in opposition to the original sanctions' motion filed by Deutsche Bank, all of which went to the underlying failure of the Sumners to submit to depositions.
Finally, the Sumners argue that the dismissal sanction was an abuse of discretion because it sought to penalize rather than accomplish the objects of discovery. We disagree. From our extensive review of the entire record of proceedings in the district court, it is abundantly clear that the Sumners' litigation conduct was based upon a deliberate strategy to delay the foreclosure action. They remained in the residence that was the subject of this action from February 2005 until late 2008 without a single payment on their mortgage obligations. As partially reflected in this court's factual statement above, they filed motions, objections, extensions, requests for continuances, requests for hearing, motions to revise journal entries, and requests for reconsideration, often in duplicate for Doug and Carol, until the record exceeded, 2000 pages, and yet never submitted to a deposition within the court-imposed discovery period to explain and be tested on their claims of numerous TILA violations and KCPA violations including misrepresentations, deceptive trade practices, and associated statutory violations. As only one example of their conduct, the Sumners consumed scores of pages in the record in *1069 the attempt to have the court revise a journal entry to reflect a purported error in a single digit of a phone number recited in the order. And to top off this conduct, in furtherance of their delay tactics, they sought to disqualify every judge assigned to their case, both in this action and in previous foreclosure actions. We agree with Judge McCarville, who suggested that the Sumners "have chosen by their voluntary acts not to allow the claims in the case to be decided on the merits." Frankly, after our review of the record on appeal, we believe that the sanction of dismissal may not have been severe enough to match the misconduct.
Having concluded that there was no abuse of discretion here, we note that the better practice is for the trial judge to warn the litigants and counsel that a failure to obey a discovery order may lead to the ultimate sanction of dismissal of any claims before invoking this extreme sanction. Although such a warning was not offered here, our evaluation of all other potential factors supports the court's sanction order and such a notice is not a prerequisite to the dismissal sanction. See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1149-50 (10th Cir.2007); Archibeque v. Atchison, Topeka & Santa Fe Ry. Co., 70 F.3d 1172, 1175 (10th Cir.1995).
We take a page from the United States Court of Appeals for the Second Circuit in stating that we intend our decision today in this case as a sharp warning that litigants and counsel may not engage in an obvious pattern of delay and harassment with impunity in Kansas courts. See Peart v. City of New York, 992 F.2d 458, 463 (2d Cir.1993).
In summary, we hold that the district court erroneously dismissed the Sumners' TILA disclosure claims for recoupment or setoff, but even if those claims had survived as a matter of law, they were clearly subject to dismissal thereafter, along with the other remaining claims, due to the discovery abuse of the Sumners.
Affirmed.